FILED

2010 Apr-09  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MATTHEW M. STEARNS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 09-S-00371-NE** |
| | ) | |
| **ASSET RECOVERY GROUP,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

On February 25, 2009, plaintiff, Matthew M. Stearns, filed a complaint against defendant, Asset Recovery Group ("ARG"), in which he asserted claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Count I), invasion of privacy by intrusion upon seclusion and by revelation of private financial facts to a third party (count II), negligent and wanton hiring and supervision (count III), breach of contract (count IV), and fraud (count V). This court entered default in favor of plaintiff on the record of these proceedings on August 4, 2009, leaving only the issue of the amount of a default judgment to be determined.[1] Plaintiff subsequently withdrew his jury demand and waived any right to a hearing, thereby allowing the amount of default judgment to be determined on the basis of written evidence alone.[2]   On January 19, 2010, plaintiff filed a motion and

---

[1] *See* doc. no. 9.

[2] *See* doc. no. 11.

evidentiary submission in support of his prayer for:  $1,000 in statutory damages;

$25,000 to $50,000 in compensatory damages; $100,000 in punitive damages; and

$2,135 in costs and attorneys' fees.[3]

Default having been entered in this case, the court accepts as true all of the

well-pleaded factual allegations of the complaint, except those relating to damages.

*See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); 10A Charles Alan

Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2688,

at 58-59 (3d ed. 1998).  The four types of damages claimed by plaintiff will be

examined in light of these facts.  According to plaintiff's complaint:

> 7.  Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

> 8.  At some point, the alleged debt was supposedly consigned, placed or otherwise transferred to Defendant ARG for collection from the Plaintiff.

> 9.  Plaintiff sued Defendant ARG in Stearns v. Asset Recovery Group, 5:08-cv-02018-CLS and the case was resolved with Defendant ARG cancelling the debt.

> 10.  Despite the promise to cancel the debt, on or about February 4, 2009, Defendant ARG telephoned Plaintiff and left a voicemail message.

> 11.  The voicemail message stated that the call was from "Investigator" Williams in regards to a civil complaint being filed

---

[3] *See* doc. no. 13 (plaintiff's motion for damages and attorney fees).

against Plaintiff and being formalized in Madison County. Plaintiff was instructed to return the call within 48 hours in regards to the complaint that was being filed or the complaint would be filed against Plaintiff. The number the Plaintiff was given to call was 716-836-4405 and the number on the caller id was 716-836-4401.

12.    Plaintiff called the number and spoke with someone who identified herself as Melinda Walker with ARG.

13.    Plaintiff gave Ms. Walker the case number from the recording and was transferred to Mr. Dickinson.

14.    Mr. Dickinson told Plaintiff that the call was in response to a debt with Associates Financial in the amount of $1,443.62 and that there was a settlement offer of $700 and some change.

15.    This debt is the alleged debt that Defendant ARG promised to cancel in the previous litigation.

16.    Plaintiff then verified with Mr. Dickinson that he was with ARG Group and Mr. Dickinson gave Plaintiff a phone number of 1-888-288-3114 extension 112.

17.    There was no suit pending against Plaintiff and Defendant had no intention to file such a suit.

18.    Defendant had no legal right to sue Plaintiff as it had cancelled the debt.[4]

In his affidavit, plaintiff expounded on the manner in which he was treated by defendant, and the effect that it had on him:

10.    The collector I spoke with was rude, ugly, demanding, and continued to threaten me with being sued unless I paid.

---

[4] Doc. no. 1 (Complaint), ¶¶ 7-18.

11.    I truly believed that when we settled the first case that this whole matter was resolved and I would never have to face this kind of threat again.

12.    As a result of the calls and breaking the settlement agreement, I was very upset, offended and scared that this debt (which I don't think I ever owed) was going to keep coming back against me. After some hard times I have been rebuilding my life and have married and have a child due any day now.  I did not want and do not want to have to keep dealing with this collection agency that threatens me and breaks their promise.  I worry that if they are still in business they will start calling family members again or will leave me threatening messages or threaten me over the phone.[5]

Determining the amount of actual damages to award for emotional distress in unfair-debt-collection cases such as this one is fairly subjective, with awards ranging from $1,000 to $25,000 or more.  *See, e.g.*, *Chiverton v. Federal Financial Group, Inc.*, 399 F. Supp. 2d 96, 102 (D. Conn. 2005) (awarding $5,000 for emotional distress); *Gervais v. O'Connell, Harris & Associates, Inc.*, 297 F. Supp. 2d 435, 440 (D. Conn. 2003) (awarding $1,500 for emotional distress); *Rodriguez v. Florida First Financial Group, Inc.*, Case. No. 6:06-cv-1678-Orl-28DAB, 2009 WL 535980, at *6 (M.D. Fla. March 3, 2009) (awarding $1,000 for emotional distress);   doc. no. 13 (plaintiff's motion for damages and attorney fees), ¶¶ 9-10 and Ex. B. (awarding $25,000 in actual damages based on jury verdict).

Plaintiff claims only mental anguish and emotional distress as "actual

---

[5] Doc. no. 13 (plaintiff's motion for damages and attorney's fees), Ex. A (Affidavit of Michael M. Stearns) (hereafter, "Stearn Aff."), at ¶¶ 10-12.

damages." *See McGrady v. Nissan Motor Acceptance Corporation*, 40 F. Supp. 2d 1323, 1337-1338 (M.D. Ala. 1998) (concluding that damages for emotional distress are actual damages under the FDCPA).  Plaintiff provides no evidence of adverse financial consequences or medical complications arising from defendant's conduct. Even so, the court is sympathetic to plaintiff's claim, and believes that he did, in fact, suffer emotional distress as a result of defendant's heavy-handed and unlawful conduct.  From February 4, 2009, when defendant first left plaintiff a threatening message, until the present, plaintiff has lived in fear that defendant would threaten plaintiff and attempt to enforce a nonexistent debt.  Plaintiff described himself as "very upset, offended, and scared that this debt (which I don't think I ever owed) was going to keep coming back."[6]  Moreover, plaintiff continues to "worry" that defendant "will start calling family members again or will leave [plaintiff] threatening messages or threaten [plaintiff] over the phone."[7]  Furthermore, it is reasonable that plaintiff's distress would continue unabated despite the filing of this lawsuit because defendant has already demonstrated, by its misconduct following the original lawsuit, that a lawsuit will not prevent it from attempting to enforce the debt in the future.  In light of these circumstances, the court awards plaintiff  $5,000 in compensatory damages for the emotional and mental distress he has suffered.

---

[6] Stearn Aff. ¶ 12.

[7] *Id.*

5

The FDCPA allows for the recovery of additional or "statutory" damages beyond actual damages in an amount not exceeding $1,000.   15 U.S.C. § 1692k(a)(2)(A).  Factors to be considered in fixing the amount of statutory damages include "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which the noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Considering the egregious nature of defendant's attempt to collect a debt that had agreed to cancel as consideration for plaintiff's agreement to dismiss his first suit, the Court finds an award of $1,000 in additional statutory damages under the FDCPA to be appropriate.

Punitive damages cannot be recovered under the FDCPA, but can be under state law claims such as fraud.[8] *See Killingsworth v. Crittenden*, 585 So.2d 903, 905 (Ala. 1991) ("A plaintiff may recover punitive damages in a fraud action[.]").  Based on the facts before the court, defendant fraudulently misrepresented that it would not attempt to collect a cancelled debt, if plaintiff would dismiss his first FDCPA action (which plaintiff did in reliance upon defendant's promise), but then intentionally

---

[8] Punitive-damage awards, like actual damages based on emotional distress, are wide ranging. *See, e.g.*, *Chiverton*, 399 F. Supp. 2d at 102 (awarding $7,500, or 1.5 times the actual damages, in punitive damages); *Gervais*, 297 F. Supp. 2d at 440 (awarding $8,000, or 2 times the actual damages, in punitive damages); *Rodriguez*, 2009 WL 535980, at *6 (awarding $2,500, or 2.5 times the actual damages, in punitive damages); doc. no. 13 (plaintiff's motion for damages and attorney fees), ¶¶ 9-10 and Ex. B. (awarding $100,000, or 4 times the actual damages, in punitive damages, based on jury verdict).

violated that promise, and threatened plaintiff with a subsequent lawsuit.[9] Furthermore, defendant has a history of violating state law in its debt collection practices.[10] Based on defendant's deceit and intentional misconduct, the court awards plaintiff $10,000 in punitive damages, which is twice the actual damages described above.[11]

Finally, a successful plaintiff is entitled to an award of reasonable attorneys' fees under the FDCPA. 15 U.S.C. § 1692k(a)(3); *Hollis v. Roberts*, 984 F.2d 1159, 1161 (11th Cir.1993). In plaintiff's motion and supplement to that motion counsel John G. Watts seeks $1,330 as attorney's fees (3.8 hours at $350 an hour) and $350 in expenses (filing fee), and counsel M. Stan Herring seeks $455 in attorney's fees (1.3 hours at $350 an hour).[12]  Attorney Watts's fees do not include any charges for "[r]eview of court documents, notices, discussions with co[-]counsel Stan Herring, discussions and emails with client after initial conversation, communications with [defendant] requesting an Answer, research into locating [defendant], and paralegal

---

[9] *See* doc. no. 1 (Complaint), ¶¶ 53-57.

[10] *See id.* ¶ 25.

[11] Plaintiff directed the court's attention to a recent jury verdict in which the jury awarded $25,000 in compensatory and $100,000 in punitive damages, under allegedly less egregious circumstances. *See* doc. no. 13 (plaintiff's motion for damages and attorney fees), ¶¶ 9-10 and Ex. B.  The court finds, however, that insufficient facts were submitted to determine the basis for the jury's award and its application to this case.

[12] *See* doc. no. 13, Ex. C. (Affidavit of John G. Watts) (hereafter, "Watts Aff."), at 3-4, and Ex. D. (Affidavit of M. Stan Herring) (hereafter, "Herring Aff."), at 3-4.

time."[13]   Attorney Herring did not charge for paralegal time or for time spent reviewing court orders.[14]

In this circuit, the Court applies the familiar lodestar approach in order to determine a reasonable attorney fee. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

It is presumed that most or all of the following factors are subsumed in the calculation of the lodestar:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

*Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974))[.]  The going rate in the community is the most critical factor in setting the fee rate.  *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).

---

[13] Watts Aff. at 4.

[14] Herring Aff. at 4.

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d 1292 at 1303. With respect to rates, an applicant may meet his or her burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

*Rodriguez*, 2009 WL 535980, at *7.

Applied here, the court finds that the number of hours expended on this case, 3.8 by Watts and 1.3 by Herring, for a total of 5.1, to be reasonable, in light of the fact that the case involved drafting a complaint and multiple motions, as well as the collection of supporting evidence. As for the reasonableness of the rate, plaintiff's counsel was awarded this same rate — $350 an hour — in another FDCPA case, evidence of which was submitted to the court, and the court finds the rate appropriate here.[15] Consequently, the court finds that an award of $2,135 in attorney's fees and costs is appropriate.

---

[15] *See* doc. no. 14 (plaintiff's supplemental motion for damages and attorneys fees).

9

DONE and ORDERED this 9th day of April, 2010.

_____
United States District Judge